IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

JUL 2 5 2006

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| ROBERT THOMAS, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. B-05-174 | |
| § | | |
| TRICO PRODUCTS CORPORATION, § | | |
| JIM GAITHER AND JOHN WINN § | | |
| § | | |
| Defendants. § | | |
| § | | |

## ORDER & OPINION

BE IT REMEMBERED that on July _24_, 2006, the Court considered Defendants' Motion for Summary Judgment [Dkt. No. 127].

### Introduction

This is an employment discrimination suit filed by Plaintiff Robert Thomas against his former employer, Trico Products Corporation ("Trico") alleging race, ethnicity, and national origin discrimination.

### Factual and Procedural Background

Plaintiff alleges that his former employer, Trico, discriminated against him based on his ethnicity and national origin when he was not rehired following a period of incarceration. The employer contends that Trico hired a better qualified candidate for the position , in part, because Plaintiff was frequently absent or tardy during his years of employment. Defendants contend that Plaintiff was offered a choice at the time of his incarceration: either resign voluntarily or be terminated. Plaintiff resigned voluntarily after using all of his vacation days to cover his absences during his incarceration. The parties disagree about whether the Defendants agreed to rehire Plaintiff following his incarceration or whether Defendants encouraged Plaintiff to reapply at that time. Plaintiff and other applicants

1

applied for an open position in August 2003, and Trico selected one of the other applicants over Plaintiff.

Plaintiff blames his divorce for his frequent absences during his prior employment with Trico. During the divorce and custody action in state court, Plaintiff refused to consent to a passport application for his seven-year-old daughter as part of a state court divorce and custody action, and the judge ordered Plaintiff incarcerated indefinitely unless he signed the application. Plaintiff was incarcerated on April 3, 2003 and released on July 31, 2003, despite his failure to comply with the court's instructions regarding the passport application. The employment discrimination claims in this case arose following Plaintiff's resignation from Trico Products Corporation on April 17, 2003 and Plaintiff's August 2003 application. After Defendants refused to hire Plaintiff, Plaintiff timely filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the Texas Human Rights Commission ("THRC"). After completing the EEOC process, Plaintiff filed this action. Plaintiff brings claims under Title 42 United States Code section 2000e(5) ("Title VII") and under Title 42 United States Code section 1981 ("§ 1981").

Plaintiff alleges that Trico and two Trico employees refused to hire him following his incarceration based on his ethnicity and national origin. Plaintiff claims that other employees have been permitted to take extended leaves and return to work. Plaintiff believes that Defendants did not permit him to take a leave during his incarceration and did not rehire him based on the fact that he was born in India and is Indian. Plaintiff also describes the failure to rehire him as being based on "East Indian ancestry" and "ethnic characteristics" [Dkt. No. 1]. Plaintiff alleges that Defendants told him at the time of his resignation that he would be rehired when he reapplied. Additionally, Plaintiff contends that an opening for the same or a substantially similar job existed at the time of his application in August 2003; however, he states that other individuals were hired who were not Indian or from India.

The parties agree that Robert Thomas and Gary Eich submitted applications to Trico in August 2003. Trico offered Eich a position as Tool Maker on August 18, 2003 [Dkt. No. 133, Ex. 8]. According to Thomas' application submitted on August 4, 2003 [Dkt. No. 127, Ex. F], Plaintiff had previously worked for Trico for two years, had been convicted of

2

a criminal offense, had earned a diploma in tool and die making in India, and had worked as a tool maker for approximately seven years total with three different companies. The criminal offense report submitted with Plaintiff's application listed one conviction for DWI in 1998 and the April 2003 incarceration for civil contempt in the custody matter [Dkt. No. 133, Ex. 14]. Additionally, in his deposition, Plaintiff confirmed the DWI conviction and added that he had been "arrested maybe two or three other times" for assault and interference with child custody [Dkt. No. 127, Ex. H, p. 60-61]. According to Eich's application on August 1, 2003 [Dkt. No. 127, Ex. G], Eich has previously worked for Trico for nine years in the press room, had no criminal convictions, had worked in tool and die repair at T & C Stamping and AdTech from approximately 1995 until 2003. In his deposition, Eich testified that he had seven years of experience in tool and die repair [Dkt. No. 133, Ex. 9, p. 47], including an apprenticeship during his years of working at AdTech [Dkt. No. 133, Ex. 9, p. 18].

Defendants contend they had legitimate, non-discriminatory reasons for selecting Gary Eich over Plaintiff to fill the Tool Maker position in the Brownsville shop. In particular, Defendants cite Thomas' attendance problems, frequent tardiness, recent voluntary resignation, and criminal history as reasons they did not select him to fill the open position. Additionally, Defendants note Eich's reliability, versatility, prior employment with Trico, positive references, and ties to the community as reasons he was chosen.

## Summary Judgment Standard

Summary judgment shall be granted if the record, taken as a whole, "together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual controversies, if any exist, are resolved in favor of the nonmoving party. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). The party making a summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery documents that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "[T]he burden on the moving

party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*; *see also Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999). Although the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," *Celotex Corp.,* 477 U.S. at 323, the party "need not negate the elements of the nonmovant's case." *Little,* 37 F.3d at 1075 (citing *Celotex,* 477 U.S. at 323).

If the moving party meets this burden, the non-movant then must designate specific facts, beyond the pleadings, showing there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Little,* 37 F.3d at 1075 (citing *Celotex,* 477 U.S. at 325). "Unsubstantiated assertions" or "mere allegations or denials" will not adequately cast doubt on material facts at issue. *See id.* Likewise, the nonmovant must present more than a "mere scintilla" of evidence. *See Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1086 (5th Cir. 1994). The evidence must be viewed in the light most favorable to the nonmovant. *See Whelan v. Winchester Prod. Co.,* 319 F.3d 225, 228 (5th Cir. 2003); *Walker v. Thompson,* 214 F.3d 615, 624 (5th Cir. 2000). Summary judgment should be granted "when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict." *Little,* 37 F.3d at 1071.

### Analysis

In a Title VII action, the plaintiff has the burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Plaintiff's claims should be analyzed as a failure-to-hire case. In a case alleging discriminatory failure to hire, the plaintiff must show that (1) he is a member of a protected group; (2) he applied for a position for which he was qualified and for which the employer was seeking applicants; (3) despite his qualifications, he was not selected for the position; and (4) after the employer declined to hire the plaintiff, an individual not in the protected class was selected to fill the position. *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 354-55 (5th Cir. 2001). After the plaintiff establishes a *prima facie* case, the defendant must produce a legitimate, non-discriminatory reason for

4

the hiring decision. *Id.* If the defendant succeeds in producing such a reason, the plaintiff must prove the reason was a pretext. *Id.*

Courts analyze Section 1981 claims under the *McDonnell Douglas* burden-shifting framework as well. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989); see *Kokes v. Angelina College*, 220 F. Supp. 2d 661, 665 (E.D. Tex. 2002). In a failure-to-promote claim under § 1981, plaintiff must establish the same elements to prove a *prima facie* case as under Title VII. *Wheeler v. BL Development Corp.*, 415 F.3d 399, 405 (5th Cir. 2005). Therefore, the Court will analyze all of the Plaintiff's claims under this same framework.

In order to establish a *prima facie* case, Plaintiff has shown that he is a member of a protected group because of his ancestry, East Indian, and national origin, India [Dkt. No. 26]. He applied for the position of tool maker that Defendant Trico advertised in *The Brownsville Herald* on July 20, 2003 [Dkt. No. 133, Ex. 5]. Plaintiff was qualified by education and experience for the position, and he had held the same position prior to his resignation [Dkt. No. 127]. Plaintiff was not hired. Instead, Trico hired Gary Eich, a Caucasian man born in the United States, thus, not a member of the protected class [Dkt. No. 127]. Therefore, Plaintiff has met his burden to establish a *prima facie* case of discrimination.

Under the *McDonnell Douglas* burden shifting framework, when the Plaintiff has established a *prima facie* case of discrimination, the defendant has a burden of production to show a legitimate, non-discriminatory reason for the hiring decision. 411 U.S. 792 (1973). Trico indicates that Eich had a longer and more reliable past work history with the company than Thomas [Dkt. No. 127]. Plaintiff's tardiness and absenteeism during his two year tenure at Trico led to verbal and written warnings that were documented by his supervisors [Dkt. No. 127, Ex. A, B, C, and D]. Additionally, Plaintiff had a criminal history while Eich did not [Dkt. No. 127]. Although Plaintiff had many years of experience as a tool maker and had completed formal training for such a position, Eich also had experience in tool and die repair and had participated in a local on-the-job apprenticeship. While Trico's advertisement described the desired technical expertise and work experience, Trico also valued reliability, dependability, and timeliness in its prospective employees [Dkt. No. 134].

5

Trico has shown that Plaintiff's poor attendance and tardiness, his criminal history, and his recent resignation provided legitimate, non-discriminatory reasons for opting to hire Gary Eich instead of Robert Thomas. Once a defendant has produced a legitimate, non-discriminatory reason, the plaintiff has the burden of proving that the reason was pretextual.

Showing that the applicant who was not hired was "clearly better qualified" than the person hired is enough to prove that the employer's reason was pretextual. *Price v. Federal Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002). The "clearly better qualified" standard is high, requiring that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Barnes v. United States Dept. of the Navy*, 95 Fed. Appx. 46, 50 (5th Cir. 2004)(*citing Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001)). Unless the disparities in qualifications "are so apparent as to virtually jump off the page and slap you in the face," courts should hesitate before substituting their judgment for that of the individual evaluating the candidates. *Deines v. Texas Dept. of Protective & Regulatory Servs.*, 164 F.3d 277 (5th Cir. 1999). "[C]ourts do not function as arbiters of employer's business decisions." *Gonzalez v. Conoco, Inc.*, 2000 WL 251744 *15 (S.D. Tex. 2000).

Plaintiff contends that Trico did not rehire him following his resignation due to his ethnicity and national origin. He argues that he is clearly better qualified than the individual selected for the position based on his years of experience as a tool maker and his training in India. Thomas had worked as a tool maker for three companies between 1996 and 2003. His application did not indicate the exact start dates of each position, but assuming the maximum months worked in each year up to April 2003, Thomas had seven years of experience as a tool maker prior to applying in August 2003. At the time of his application, Thomas had not worked for approximately 3 months during the period of his incarceration. Gary Eich had worked in tool and die repair for two companies between 1995 and 2003. His application does not indicate which year he was promoted from the Press Room Supervisor to Tool and Die Repair at AdTech. Based on the application, it appears that Eich had as many as eight years of experience. In his deposition, Eich clarified that he had seven years of tool and die repair experience. Although Plaintiff and the individual selected

for the job had equivalent years of experience, the Fifth Circuit has held that attempting to equate years served with superior qualifications is unpersuasive. *Bodenheimer v. PPG Indus.*, 5 F.3d 955, 959 (5th Cir. 1993). Based on their training and experience, both Thomas and Eich were qualified for the open position. Trico had previously employed both men, and thus, Defendants were in a unique position to evaluate the applicants based on their past work history and performance. Plaintiff has not produced any evidence that Eich performed poorly during his previous nine years of employment with Trico. Additionally, Plaintiff has not presented any evidence that Defendants based their hiring decision on his race, ethnicity, or national origin. On the contrary, Defendants kept a personnel file on Plaintiff in which his supervisors documented his history of poor attendance and frequent tardiness [Dkt. No. 127, Ex. A, B, C, and D]. Defendants possessed past personnel files for both applicants in August 2003. Thus, after determining both men were qualified for the open position, Defendants offered the position to the applicant determined to be better qualified for the job.

Plaintiff has failed to meet his burden of proof that he was "clearly better qualified" than other applicants, and therefore, Plaintiff has failed to establish that Defendant's reasons for failing to hire him were pretextual. Plaintiff has failed to disprove Defendant's explanation that Eich was better qualified for the position. In conclusion, Thomas has failed to present evidence from which a reasonable factfinder could infer that he was intentionally discriminated against. Although Plaintiff may believe discriminatory animus motivated Defendant's hiring decision, Plaintiff has failed to produce any factual basis that his national origin or ethnicity was a motivating factor in the hiring decision. Absent a genuine fact question that Plaintiff suffered unlawful discrimination in his non-selection for the job, summary judgment is proper. Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment [Dkt. No. 127].

## Conclusion

For the reasons discussed above, the Court **GRANTS** Defendants' Motion for Summary Judgment [Dkt. No. 127]. In addition, the Court **DISMISSES AS MOOT** Plaintiff's Motion for Extension of Time to Conduct Mediation [Dkt. No. 129]. Finally, the Court **ORDERS** the District Clerk to close the above-styled case upon entry of final judgment.

DONE at Brownsville, Texas, this 24 day of July, 2006.

Hilda G. Tagle
United States District Judge